THODE, GUARDIAN, v. SPOFFORD ET AL. (Two cases.)

1. **Landlord and Tenant:** HUSBAND LEASING LAND OF INSANE WIFE. Persons renting of a husband land belonging to his insane wife will be regarded as tenants of the wife.

2. **Tax Title:** RECOVERY OF LAND UNDER: STATUTE OF LIMITATIONS. Under § 790 of the Revision of 1860, an action upon a tax title, to recover the possession of land from the holder of the patent title, was barred after five years from the date when the tax deed could have been procured.

3. **Landlord and Tenant:** ACQUIRING ADVERSE TAX TITLE BY TENANT. Tenants are bound to know that their possession is the possession of their landlord, and that such possession for more than five years after a tax title accrues bars all rights of the holder of the tax title to the possession of the premises, and they cannot, by taking a warranty deed from the holder of the tax title, after it is so barred, claim anything, as innocent purchasers, against their landlord.

4. **Husband of Insane Wife:** POWER TO DISPOSE OF REAL ESTATE. The husband of an insane wife has no power to divest her of an interest in real estate.

5. **Jurisdiction:** OF ACTION BY CROSS-BILL AGAINST CO-DEFENDANT: NOTICE NECESSARY. Where a defendant sets up a cause of action by cross-bill against his co-defendant, notice of such action must be served upon the co-defendant, in order to give the court jurisdiction to render judgment against him on the cross-bill. Code, § 2663. *Devin v. City of Ottumwa*, 53 Iowa, 461, distinguished.

6. **Judgment:** FOR DEFENDANT AGAINST CO-DEFENDANT, WITHOUT NOTICE, ON COMPROMISE WITH PLAINTIFF: CO-DEFENDANT NOT BOUND BY COMPROMISE. Where a county sought to subject the property of an insane woman to the payment of expenses incurred in

her behalf in the hospital, and made S. a party thereto, on account of his holding a tax title on the land, and he paid the demand of the county, without judgment therefor, in consideration that he might be allowed to have the title quieted in him, as prayed in a cross-bill, of which his co-defendant, the woman, had no notice, *held* that such payment by him was purely voluntary, and that her guardian was under no obligation to reimburse him therefor as a condition of redeeming the land from the tax title.

7. **Tax Sale:** REDEMPTION FROM: AMOUNT TO BE PAID: STATUTE OF LIMITATIONS. One who has the right to redeem from a tax sale must pay all taxes paid by the purchaser within five years prior to the commencement of the suit to redeem, with interest and penalties provided by law; but the right of recovery for all sums paid before that time by the purchaser for taxes and upon tax sales *is barred by the statute of limitations*, and need not be paid in redemption.

8. ——: PAYMENT OF SUBSEQUENT TAXES BY PURCHASER: FILING DUPLICATE RECEIPT WITH AUDITOR: CODE, § 889. The provision of § 889 of the Code, requiring a purchaser at tax sale, upon paying subsequent taxes, to file with the auditor the duplicate tax receipt, in order to recover the tax upon redemption of the land, does not apply to one who has procured his tax deed, and pays taxes on the land as owner thereof.

9. **Insane:** CLAIM OF COUNTY FOR SUPPORT OF: LIEN ON LAND. Under § 1488 of the Revision, and § 1433 of the Code, a county has no lien, without judgment, upon the real estate of an insane person for expense incurred on account of such person in the hospital.

*Appeal from Polk Circuit Court.*

TUESDAY, DECEMBER 9.

ACTIONS in chancery to set aside certain tax sales of real property and deeds made thereon; to quiet title, and for other relief. There was a decree granting the relief prayed for by plaintiff, upon payment of certain sums which the circuit court found the plaintiff ought to pay to entitle him to redeem the property. Both parties appeal. The cases involve the same facts and questions of law, and they are submitted together for one decision.

*H. W. Maxwell* and *William Phillips*, for plaintiff.

*Brown & Dudley*, for defendant.

BECK, J.—I. The property involved in these suits is a

part of two lots in the city of Des Moines.  The east half of the property is involved in one suit, and the west half in the other.  The title to each involves the same questions of fact and law, and need not be separately referred to in the discussion of the case.

The plaintiff is the guardian of his insane mother, Helen Thode, who holds the title of the property, unless it be divested by certain tax sales and deeds, and an alleged adjudication, upon which defendants base their respective titles.

Defendants claim title under several tax sales and deeds, some of them for city and the others for state and county taxes. The tax deeds were all made to defendant, Spofford, and the last one was executed July 10th, 1874, upon a sale for taxes made Oct. 3, 1866.  The other deeds were made upon prior sales.

The property formerly belonged to John H. Thode, and was conveyed by him in 1863 to J. H. Phillips, who immediately conveyed it to Helen Thode, wife of J. H. Thode, and now plaintiff's ward.  It is alleged in the answers of defendants that these conveyances were made for the fraudulent purpose of defrauding the creditors of John H. Thode.  We find that this allegation is not sustained by the proof.

J. H. Thode leased the separate lots claimed by the respective defendants, Stowe and Bird, to them, and each went into possession under his lease, which, in each case, granted a term for five years.  Stowe's lease was executed August 16, 1870; Bird's on the 22d of May, 1871.  Each of the defendants paid rent to Thode until October, 1874; after that date, to Spofford, who conveyed to Stowe the property claimed by him, November 2, 1875, and conveyed to Bird the other part of the lot May 31, 1877.  Thode assigned the lease executed by Stowe to Spofford, October 1, 1874.  Helena Thode, the wife of J. H. Thode, was, in proper proceeding in the county court of Polk county, on the thirteenth day of February, 1866, declared insane, and an order was made directing her to be sent to the hospital for the insane at Mount Pleasant, and

she was taken to that institution, and kept there, under this order, for a number of years. The printed abstract sometimes gives her name as *Helen*, and sometimes as *Helena*, a discrepancy doubtless resulting from careless proof reading. April 29, 1880, the husband was appointed guardian for Mrs. Thode.

The leases to defendants and the assignment of the Stowe lease to Spofford were not executed by Thode as guardian for his wife, nor is she or her interest in the property referred to in these writings.

II. The defendants, Stowe and Bird, held the respective lots as tenants until they purchased of Spofford. While they

1. LANDLORD and tenant: husband leasing land of insane wife.

rented of her husband, the law will regard them as the tenants and Mrs. Thode the owner of the property. We need not inquire into the effect of the assignment of the lease of Stowe to Spofford.

III. As we have seen, the most recent tax sale, under which Spofford claimed title, was made October 3, 1868. At

2. TAX title: recovery of land under: statute of limitations.

the expiration of three years from the date of the sale, the purchaser at the tax sale was entitled to a deed, (Rev. § § 779, 781,) and at the expiration of five years from the date when the tax deed could have been issued, the right of the holder of the tax title was barred, and he could not have recovered the possession of the land in an action against the tax payer. Rev., § 790; *Hintrager v. Hennesey*, 46 Iowa, 600. October 3, 1874, the owner of the property, if she was in possession, was entitled to hold it against the tax title. When defendants, Stowe and Bird, purchased the lots and took conveyances from Spofford, his right of action under the tax deeds was barred. The defendants were tenants holding under the owner of the property,

3. LANDLORD and tenant: acquiring adverse tax title by tenant.

Mrs. Thode, and cannot gain protection as innocent purchasers under the deed of warranty executed to them by Spofford. They were bound to know that Mrs. Thode, though insane, held possession of the lots, and they had, therefore, notice that, when Spofford con-

veyed to them, his right of action was barred by the statute, for they are presumed to be informed of the provisions of the law whereon the rights of their landlord to the property depended. They were charged, too, with notice of Spofford's title—that it rested upon tax sales. They therefore purchased the property with full notice of the infirmity in the title resulting from the possession of Mrs. Thode, and the bar of the statute based thereon. See *The Keokuk & Des Moines R'y Co. v. Lindley*, 48 Iowa, 11.

The defendants gained nothing from the assignment of the lease by Thode and other acts done by him, intended to surrender the property and right thereto. These acts do not bind Mrs. Thode, who, when they were done, was insane. Indeed, if she had not been insane, they would not divest her right to the property, unless done by her authority and nothing of the kind is attempted to be shown in this case.

**4. HUSBAND of insane wife: power to dispose of real estate.**

IV. In 1874 the auditor of Polk county brought an action against Helen Thode to recover the amount paid by the county for her support while at the insane hospital. The petition alleges that she is the owner of the property in controversy in this suit, and it seeks to charge the same with the amount due the county. Spofford is made a defendant in the action, on the ground that he is the holder of a tax title on the property. A guardian *ad litem* was appointed by the court for Mrs. Thode, after service of notice on her as required by the statute, who answered this petition, denying all the allegations thereof. Spofford answered the petition, denying the allegations thereof, and setting up his tax titles, and averring that thereby he acquired the title of the property. The answer prays that Spofford may be declared to hold the title to the property as against Mrs. Thode, and that it be quieted in him. No notice or process of any kind was issued against the guardian *ad litem* or Mrs. Thode, and no appearance or answer was made to this answer of Spofford. A decree was entered

**5. JURISDICTION: of action by cross-bill against co-defendant: notice necessary.**

against Mrs. Thode in favor of Spofford, declaring that his tax titles are valid, and quieting the title in him. No judgment was entered against her in favor of the plaintiff in the action.

This decree is now pleaded by Spofford and the other defendants as an adjudication binding plaintiff. It can have no such effect. If Spofford's answer be regarded as a cross-bill against Mrs. Thode, she was not required to answer it without notice. It set up a cause of action against her independent of the action of plaintiff. It was, indeed, an action between her and Spofford, of which she could have no notice from the process served upon her by plaintiff. In such cases, the law always has been that defendants to cross-bills or cross-actions brought by co-defendants must be served with notice of the claims made against them. This is the rule of our statute. Code, § 2663. In the absence of such notice, the court has no jurisdiction to render judgment against Mrs. Thode.

*Devin v. The City of Ottumwa*, 53 Iowa, 461, is not inconsistent with the conclusion we have reached upon this point. In that case the defendants set up conflicting titles and claims to the land in controversy, but did not claim relief, the one against the other. It is not shown that the respective defendants did not have notice of the claim of title made by the co-defendants. The decision is based upon the ground that the title was put in issue by the pleadings of the respective defendants, and, being so in issue, the decree quieting the title as to one would not be erroneous, for the reason that no direct claim for relief was made against the defendant appealing. As the question of title was an issue raised by the pleadings, there was no want of jurisdiction on the ground that no notice was served, for the reason that the appearance and pleading by the respective parties waived the necessity of process against them. In this case, the title of the property was not put in issue by the pleadings, so far as Mrs. Thode was concerned, for her guardian *ad litem* makes no

averment or statement in regard to the title. There being no issue involving the title between defendant Spofford, and the guardian *ad litem,* and no notice having been served as required by law, the decree is void, and cannot be regarded as an adjudication.

We reach the conclusion that the title of the property is in plaintiff's ward, and that he is entitled to recover in this action, and that the title ought to be quieted in Mrs. Thode.

V. We are required to determine what sum plaintiff shall pay to redeem from the tax sales and taxes paid by defend-

**6. JUDGMENT: for defendant against co-defendant, without notice, on compromise with plaintiff: co-defendant not bound by compromise.**

ants. The court below, by its decree, required plaintiff to pay the sum of $1,500, and interest thereon, paid by Spofford to Polk county in discharge of its claim against Mrs. Thode. That sum, it appears by the evidence, was paid by Spofford in the way of a settlement or compromise, on condition that he should have a decree against Mrs. Thode quieting the title to the lots in him. As we have said, there was no adjudication upon the claim against the insane woman,—no judgment rendered against her. We cannot understand upon what ground Spofford made the payment, other than that he was thereby enabled to obtain the decree granting him the relief he sought. There is no adjudication that Mrs. Thode's estate was liable to the county in any amount which could be enforced against the lots. The payment by Spofford was wholly voluntary. Surely he cannot come into a court of equity seeking relief in the form of a judgment against the insane woman, on the ground that, while she was insane, he paid $1,500 for the purpose of inducing a judgment against her, which we find to be void for want of jurisdiction in the court rendering it. His attempted purchase of a judgment in that way gives him no ground to recover now from the guardian the sum he unwisely expended.

VI. The defendants may recover in this action for all taxes paid by them within five years prior to the commence-

Thode, Guardian, v. Spofford et al.

ment of this suit, with interest and penalties
provided by law in case of redemption from tax
sales. All sums paid by them for taxes and upon
the tax sales before that time are barred by the
statute of limitations. *Brown v. Painter*, 44 Iowa, 368.

7. TAX sale: redemption from: amount to be paid: statute of limitations.

While we would not enforce a lien upon the land for taxes
paid by the holder of a tax sale certificate, unless the statute
requiring the tax receipts to be filed with the
auditor be complied with, we think the provision
of the statute does not apply to cases where tax
deeds have been executed, and the holder thereof
pays as the owner of the land. See Code, § 889. *Kennedy
v. Bigelow*, 43 Iowa, 74. We have held in *Everett v. Beebe*,
37 Iowa, 452, and cases following that decision, that, when
there has been a valid levy and assessment of taxes, we will,
when redemption is sought, require it to be done upon pay-
ment of a sum sufficient to pay all taxes, if they had not been
paid by the purchaser at the tax sale.

8. ——: payment of sub- sequent tax- es ; filing duplicate receipt: code, § 889.

The evidence shows that payments amounting to $150 were
made upon the taxes many years ago. This sum will not be
deducted from the amount for which defendants are entitled
to recover on account of taxes paid by them. The payments
were made upon taxes, the recovery of which we hold is barred
by the statute of limitations. They ought not to be deducted
from taxes the recovery of which is not barred.

VII. We think the decree of the court below touching
the value of the improvements, and the rental value of the
lots, is substantially correct and in accord with the testimony.
We have discovered no ground for changing them.

VIII. The cause will be remanded to the circuit court for
a decree in accord with this opinion, which shall authorize
plaintiffs to redeem within eight months from the rendition
of the decree, upon payment of the amounts found due on
account of taxes paid and improvements made, less the rental
value of the property, at the date found by the decree of the
court appealed from up to the day of redemption. Other

provisions in the decree appealed from, not in conflict with this opinion, will be incorporated in the new decree. The defendants will pay the costs of the appeal.

REVERSED ON PLAINTIFF'S APPEAL.<br>AFFIRMED ON DEFENDANTS' APPEAL.

### SUPPLEMENTAL OPINION.

PER CURIAM. A petition for a rehearing was entertained in this case upon two questions: *First*, as to the right of appellees to be reimbursed for the amount paid by Spofford on the claim of the county for keeping Mrs. Thode in the insane hospital; *Second*, as to the right of appellees to be reimbursed for the amount of taxes paid, other than those paid within five years. As to the $1,500 paid to the county, it is important to remember that Bird and Stowe are not entitled to any relief except such as inured to Spofford. His most recent tax title was barred October 3, 1874. All payments of taxes by him after that time were not based upon any tax title. They were not payments made to protect any interest he had in the lots, for the very obvious reason that he had no interest to protect. When the action was brought by the county, if he had any right to any relief, it was that he might be reimbursed for any taxes that he had paid, upon the ground that there was an implied contract for reimbursement, or that the payment was necessary to protect some lien he had upon the property. He was not satisfied with this, but asserted title against Mrs. Thode, and took a decree against her, which was void for want of jurisdiction. To obtain this decree he paid the county $1,500. The claim of the county was not a lien upon the property. Counsel claim

9. INSANE: claim of county for support of: lien on land.
that under section 1433 of the Code, and 1488 of the Revision of 1860, the claim of the county became a lien from the commencement of the suit by the county Those sections make no provisions for a lien, either before suit commenced or afterwards. They sim-

ply provide that the support of the insane at public expense shall not be construed to release the estate of such persons from liability for their support; and counties are authorized to collect from the property of patients any sum paid by the county in their behalf. The collection is to be made, like any other claim, by action, judgment and execution; and there is no lien until it is obtained by the judgment of the court. The payment by Spofford was, therefore, purely voluntary. He should have been content with asserting his rights in that action, which, as we have said before, consisted in reimbursement for taxes paid, if he had even the right to that relief.

II. As to the taxes paid more than five years previous to the commencement of the suit, we have little to add in addition to what is said in the foregoing opinion. These taxes were paid at a time when Bird and Stowe were in possession under their leases. Mrs. Thode was then insane. There is no claim that they were made to protect her title. On the contrary, they were payments made with the purpose of depriving her of her title,. and we are not inclined to think that there is any equity in the claim for these taxes which should overreach the statute of limitations.

The former opinion is adhered to.