JOHN DOUD, JR., Appellee, v. CALEB H. BLOOD *et al.*, Appellants.

89   237
118  328

1. Tax Title: VALIDITY AGAINST PRIOR MORTGAGE: REDEMPTION BY GRANTEE OF MORTGAGOR: DELAY IN PROCURING DEED. A tax deed, issued eleven years after the tax sale, to the grantee of one who was the owner of said property at the time of the sale, will not give to said grantee, and those claiming under him, a title to said real estate superior to a mortgage made by said owner, and which was duly recorded prior to the conveyance to said grantee.

2. Practice in Supreme Court: QUESTIONS CONSIDERED ON APPEAL. The supreme court will not consider mere questions of proper computation of the amount of a decree in an equity cause unless the matter has been presented specifically to the district court.

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

THURSDAY, OCTOBER 12, 1893.

THIS is a suit in equity to foreclose a mortgage upon certain real estate. There was a decree for the plaintiff. The defendants appeal.—*Affirmed.*

*A. E. Clark* and *R. M. Wright*, for appellants.

*A. N. Botsford* and *John Doud, Jr.*, for appellee.

ROTHROCK, J.—The mortgage which the plaintiff seeks to foreclose was made by Caleb H. Blood to one Norton on the twenty-eighth day of July, 1879. The plaintiff is now the owner of the mortgage, and it appears to have been given to secure the payment of an honest debt. It is true that it is claimed the mort-

gage was without consideration, and that the claim of
the plaintiff is in other respects invalid, but there is no
foundation in the record or evidence for any such conten-
tion. The mortgage was upon two hundred acres of land
in Webster county. Caleb H. Blood, the mortgagor,
entered the lands in the year 1858, at the proper United
States land office, and they were duly patented to him.
In the year 1869 said land was sold by the county treas-
urer for the delinquent taxes for the year 1868. Blood,
the mortgagor, at the time he entered the land, was a
nonresident of this state, and at all times since that
date he has been a nonresident. His business in con-
nection with his land in paying taxes was managed by
agents. At one time one Soule was his agent. At
another time E. G. Morgan was his agent. Some time
before the expiration of the three years allowed for
redemption from the tax sale, Soule, who was then act-
ing as agent for Blood, made an arrangement by which
he gave his promissory note to the First National bank
of Ft. Dodge for the sum of one hundred and thirty.
dollars, which was used in purchasing the tax sale cer-
tificates for Blood. Morgan signed the said note as
surety, and the tax sale certificates were left with Mor-
gan to secure him for signing the note as surety. Soon,
thereafter, Soule died, and Morgan paid the note to
the bank. Blood had knowledge of the facts, and in
1874 he paid Morgan the principal part of said indebt-
edness. Blood was in Ft. Dodge in 1879, and effected
a settlement of the amount yet due to Morgan, and an
agreement was made between them by which Blood
was to pay to Morgan seventy dollars in full, and Mor-
gan was to deliver the certificates to Blood. Shortly
after this agreement was made, Morgan, during his
absence from home, left the certificates with his
brother, with directions to surrender them to Blood upon
the payment of the seventy dollars. Very soon after
this agreement was made, and on the twenty-eighth

day of July, 1879, A. H. Clarke paid to the brother of Morgan the sum of seventy dollars, and took an assignment of said certificates to one Adams, and on the fourth day of September, 1880, said certificates were presented to the treasurer of the county, and a tax deed was made to said Adams. Before that, and in 1879, Blood made a quitclaim deed for said lands to D. R. Blood, and in November, 1880, D. R. Blood quitclaimed the land to Adams. The parties defendant who are resisting the foreclosure of the plaintiff's mortgage are the said Adams and Emeline Campbell, one of his grantees.

I. It will be apparent, from the foregoing facts, that the defendants can not resist the foreclosure of the

1. TAX title: validity against prior mortgage: redemption by grantee of mortgagor: delay in procuring deed.

mortgage because of the conveyances made by Blood. The plaintiff's mortgage was filed for record before any of the said conveyances were made. The defendants claim title to the land as against the plaintiff's mortgage because of the tax deed to Adams. It is true that the said Emeline Campbell claims title under subsequent tax sales. But these sales and deeds were made at a time when she was under a legal obligation to pay the taxes, and can not be allowed to affect her title under the tax deed to Adams and the conveyances from Blood. There is enough in this case which requires consideration without elaborating the principle just stated, which is one of the elementary doctrines pertaining to tax titles. Without stating all of the facts, it is enough to say that the defendants, when they secured tax titles subsequent to acquiring the title under Adams and the quitclaims under Blood, were merely paying their own taxes.

It appears to us to be quite apparent from the above statement of facts pertaining to the acquisition of the tax sale certificates that they conferred no right on Clarke or Adams to tax deeds. Morgan had no

authority to sell the certificates to Clarke for Adams or any other person. They were the property of Blood, and were not negotiable. A certificate of purchase at tax sale in the hands of an assignee is chargeable with all the infirmities that would affect it in the possession of the original holder. *Besore v. Dosh*, 43 Iowa, 211. The original holders of these tax certificates had sold them to Blood, and this operated as a redemption of the land from the tax sale. *Bowman v. Eckstein*, 46 Iowa, 583; *Burns v. Byrne*, 45 Iowa, 285; *Hunt v. Seymour*, 76 Iowa, 751. The certificates were of no more avail in the way of conferring a right on Clarke or Adams to a tax deed than if they had been blank paper.

And the tax deeds founded on said certificates were invalid, because they were not made for nearly eleven years after the sale. The sale was had on the fourth day of October, 1869, and the tax deeds were made on the fourth day of September, 1880. The three years allowed for redemption expired October 4, 1872, and the time within which tax deeds might issue expired five years thereafter, or in October, 1877. It was held in *Hintrager v. Hennessy*, 46 Iowa, 600, and that holding has been repeatedly followed by this court, that an action by the holder of a tax deed, to recover possession of the property sold for delinquent taxes, is barred after the expiration of five years from the time when he became entitled to a deed; in other words, a deed made more than five years after the period of redemption expired could not, under the statute then in force, be made the basis of the assertion of an affirmative right. The same statute was in force when the deeds under which the defendants in this action claim title were executed. Applying that rule to the facts in this case, we have the following state of case. The plaintiff is the owner of a mortgage upon the property, made by the owner of the patent title to the land. He has commenced an action to foreclose his mortgage, and there

is no defense to his suit, except that founded on tax deeds which conveyed no title because the land had been redeemed from the sales, and the claim of the defendants was barred because the deeds were not made within five years from the time they should have been made.

It is claimed that, under section 897, subdivision 3, of the Code, the plaintiff can not question the validity of the tax deeds, because he does not show that he, or the person under whom he claims title, had title to the land at the time of the tax sale, and that all taxes due upon the property have been paid by such person, or the person under whom he claims. It is probably a sufficient answer to this position to say that it is the defendants who are asserting the right to defeat the foreclosure of the plaintiff's mortgage, and in making their defense they show that the tax deeds conferred no title on Adams, the grantee therein. It is shown beyond question that Blood was the owner when he made the mortgage. The mortgagee or his assignee asserts the right to foreclose. The defendants are grantees under Blood, and took the patent title with notice of this mortgage. The only ground upon which they base their defense is the tax deeds, which by their very dates show that they were made and delivered long after there was any right to tax deeds, and the evidence shows beyond question that the land was redeemed by Blood. Under these circumstances we know of no rule announced in any case in this court which would preclude the plaintiff from the foreclosure of his mortgage. We think the foregoing discussion disposes of all material questions in the case. There are positions taken by counsel in argument in addition to those considered which do not appear to us to demand separate consideration, and we need not notice them in detail.

II. Lastly, it is claimed that the decree for plaintiff is in too large an amount. The amount claimed in the

2. PRACTICE in supreme court: questions considered on appeal.

petition is six hundred dollars, with interest from the commencement of the suit at the rate of ten per cent. per annum. The court found that the amount due at the trial, more than two years after the suit was commenced, was six hundred and twenty-five dollars. It is claimed that part of the amount due on the mortgage was paid by the present owner of a tract of land which was embraced in the mortgage, and that the whole sum should be apportioned to all of the land. We do not discover that any question of this kind was made by pleading, nor in any other manner in the court below. This court will not examine into mere matters of computation, unless it is shown plainly that the matter has been presented specifically to the court below.

The decree of the district court is AFFIRMED.